**Gerry La–Keith BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 680–92.**

Court of Criminal Appeals of Texas, En Banc.

June 23, 1993.

Russ Henrichs, Dallas, for appellant.

John Vance, Dist. Atty., and Robert P. Abbott, Janet Wright and Mark Nancarrow, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Gerry La–Keith Brown, appellant, was charged by indictment with murder, alleged to have been committed on November 29, 1988. Appellant was found guilty by a jury on May 8, 1989 in the 203rd Judicial District Court of Dallas County and sentenced to confinement for life in the Texas Department of Criminal Justice, Institutional Division. In an unpublished opinion, the Fifth Court of Appeals reversed the trial court's judgment. This Court vacated that decision and remanded the case for consideration of the implied consent argument as well as appellant's other points of error if necessary. On remand, the Fifth Court of Appeals affirmed appellant's conviction in an unpublished opinion holding that appellant impliedly consented for the police to enter his home and that the subsequent police action in searching the purse, which was in plain view, was reasonable because appellant had reported his wife's purse missing and had called the officers to the scene. This Court granted appellant's petition for discretionary review to determine whether a person may implicitly con-

sent to a warrantless search of his home by summoning police to investigate a murder on the premises. This case represents the first time this Court has examined the doctrine of implied consent.

## I. *SUMMARY OF PERTINENT FACTS*

On November 29, 1988, appellant called the police, his neighbor and his sister-in-law with news that he had just found his wife dead in the garage. Appellant asked the police dispatcher to send a squad car and an ambulance, to the crime scene which also was his home. He also volunteered the opinion that someone had robbed his wife because her purse was missing. Appellant appeared very upset, and an officer soon escorted him to a patrol unit to calm down and stay warm until the investigators could speak with him. Appellant proceeded to discuss his activities earlier that day.

When a detective of the Physical Evidence Section arrived at the murder scene, other officers had already cordoned off the area. The detective initially went into the garage and observed the deceased's body. He then learned from other police officers at the location that the deceased had apparently been robbed, and that her purse was missing. The detective unsuccessfully searched outside the residence for the purse or anything that might have been discarded from it. He then photographed the garage, and examined the complete exterior of the house for signs of forced entry.

Although the garage was detached from the house, the detective noticed the back door of the house leading to the garage was open and he went into the house. He entered the house and photographed the inside, which exhibited no evidence of being ransacked. He looked throughout the home and noted blood splatters on the right inside of the entrance door to the southeast bedroom. Blood splatters were also noted on the wall behind and above the TV in the same room. In the southwest bedroom, he observed a purse sitting on top of a bedroom dresser. He thought the purse belonged to the deceased. The detective

opened the purse and found a security officer identification card bearing appellant's name, $164 cash, and a cash register receipt from What-A-Burger. The detective took the receipt, which later would be used to disprove appellant's story, and the identification to another detective. The purse looked like a woman's handbag but actually belonged to appellant.

A few hours later at the police station, a homicide detective interviewed appellant more extensively. During this interview, an inconsistency appeared between appellant's assertion that he had remained home all evening and the receipt's indication that appellant had been to a What-A-Burger restaurant. This discovery and other discrepancies caused the homicide detective to suspect appellant had murdered his wife. The homicide detective then read appellant his *Miranda*[1] rights.

## II. CONSENT AND MURDER SCENE EXCEPTION

During the earlier search of the home, appellant was not a suspect. The detective's search of the home was without warrant or the expressed consent of appellant. In fact, no officers ever approached appellant about consent to search. He was in a police car and appeared to be grieving over the death of his wife. In *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the United States Supreme Court unanimously rejected the contention that one of the exceptions to the Warrant Clause is a "murder scene exception." They noted that police may make warrantless entries on premises where "they reasonably believe that a person within is in need of immediate aid," *id.*, at 392, 98 S.Ct. at 2413, and that "they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises," *ibid.* They held that the " 'murder scene exception' ... is inconsistent with the Fourth and Fourteenth Amendments—that the warrantless search of Mincey's apartment was not constitutionally permissible simply be-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

cause a homicide had recently occurred there." *Id.,* at 395, 98 S.Ct. at 2415.

In *Thompson v. Louisiana,* 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), several sheriff's deputies responded to a call by Thompson's daughter that Thompson had fatally shot her husband, attempted suicide, and then, changing her mind, called her daughter and requested help. *Thompson,* 469 U.S. at 18, 105 S.Ct. at 410. The daughter contacted the police, who upon arrival were admitted into the house and directed to the rooms where the defendant and victim were. The police officers immediately transported the then unconscious Thompson to the hospital and secured the scene. Thirty five minutes later two members of the homicide unit arrived and in a follow-up investigation conducted a two hour general exploratory search for evidence of a crime. The search was without a warrant. In *Thompson,* the incriminating evidence seized was a pistol found inside a chest of drawers in the same room as the deceased's body, a torn up note found in a wastepaper basket in an adjoining bathroom, and the alleged suicide note found folded up inside an envelope containing a Christmas card on the top of a chest of drawers. By the time the investigators arrived, the officers who originally arrived at the scene had already searched the premises for other victims or suspects. The investigating officers testified to having time to secure a warrant and that no one had given consent to the search. *Thompson,* 469 U.S. at 19, 105 S.Ct. at 410. The United States Supreme Court decided that the *Mincey* decision was squarely on point in the *Thompson* case.

They reasoned that the timeliness question (2 hour search in *Thompson* versus a 4 day search in *Mincey* ) was irrelevant. The matter of "diminished" expectation of privacy in her home because she requested assistance and let the police in may have justified seizure of evidence under the plain view doctrine, but this evidence was not discovered in plain view. The matter of consent was not explored since the investigators explicitly testified that they had received no consent. The Court then referenced *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), as the measurement of valid consent.

Appellant argues that *Thompson* requires reversal of this case because the search conducted in appellant's house was also made without a warrant. Despite some similarity of Thompson's and appellant's case, *Thompson* is not applicable because there was no assertion in *Thompson* that the search was consensual. *Id.* 469 U.S. at 23, 105 S.Ct. at 412. However, the Supreme Court in *Thompson,* suggested that were consent to be raised as an issue, it would have to be measured against the standards of *Schneckloth v. Bustamonte, id.* 469 U.S. at 23, 105 S.Ct. at 412.

We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. **Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.** [Emphasis added.]

*Id.* 412 U.S. at 248–249, 93 S.Ct. at 2059. Because the nature of appellant's consent would be implied, the specific facts must be reviewed to establish implied consensual elements of the search herein.

### III. IMPLIED CONSENT

In *Ziegler v. State,* 402 So.2d 365, 371–72 (Fla.1981), the Florida Supreme Court sanctioned implied consent. Therein the defendant murdered his wife, her parents and then shot himself. He then called the police to the scene of the crime and the police conducted an investigation. The Court reasoned:

If the police officers had gone to the store for a reason other than defendant's invitation, they would have been perfectly entitled to look inside to ascertain the

need to offer immediate aid or to see if a killer was still on the premises. In the course of this activity they would have likewise been permitted to seize all evidence that was in their plain view.

The Florida court reasoned that the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. The Court's premise in denying the motion to suppress was based upon the defendant's act of inviting the police and held that that invitation removed any application of *Mincey*.

In *State v. Fleischman*, 157 Ariz. 11, 754 P.2d 340, 343–44 (App.1988), the defendant and his wife were owners of a restaurant. He found his wife lying on the floor of the restaurant and told an employee, "My wife was killed, they killed my wife." A call was made to the police. Evidence found during their investigation became the subject of the motion to suppress. The court reasoned that by reporting to the police that his wife had been killed, the defendant gave at least implied consent to the initial entry by the officers. The court then held:

> When a crime is reported to the police by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person, he or she implicitly consents to a search of the premises reasonably related to the routine investigation of the offense and the identification of the perpetrator. So long as that individual is not a suspect in the case or does nothing to revoke his consent, the police may search the premises for these purposes, and evidence obtained thereby is admissible.

Furthermore, evidence obtained in the subsequent investigation by the homicide detectives, other than that which was in plain view during the initial search, is admissible only if that consent can be found to extend beyond the initial sweep.

In *Kelly v. State*, 75 Wis.2d 303, 249 N.W.2d. 800 (1977), the defendant was accused of shooting her employer for whom she was a "private duty nurse." Kelly reported the shooting. The subsequent police investigation rendered evidence from the premises implicating Kelly as the murderer.

> "[I]t was the defendant herself who called the police and under circumstances that implied that the victim had shot himself or had been shot by someone other than the defendant and was running around outside. Under such circumstances there was an implied consent not only to aid the victim but to determine what had caused the death or injury and who was responsible. Looking for the gun on the grounds surrounding the house and under the porch constituted a reasonable search under the consent given."

*Id.* 249 N.W.2d at 805. The court however, refused to allow the consent to search given by Kelly the day of her report of the shooting to carry over to the next day; therefore, evidence found in the subsequent investigation was suppressed.

In *State v. Koedatich*, 112 N.J. 225, 548 A.2d 939 (1988), the New Jersey Supreme Court wrote:

> A consent sufficient to avoid the necessity of a warrant may be express or implied from the circumstances. "An *implied* consent to search is as efficacious and effective as an *express* consent to search." *People v. Engel*, 105 Cal. App.3d 489, 504, 164 Cal.Rptr. 454, 463 (1980). Consent may be "implied," because it is found to exist merely because of the person's conduct in engaging in a certain activity. W. LaFave, Search & Seizure; A Treatise on the Fourth Amendment § 8.2(1), at 219 (2d ed. 1987). Moreover, courts in other states have found implied voluntary consent where, as in the instant case, the defendant has initiated police contact and has adopted a "cooperative posture in the mistaken belief that he could thereby divert or prevent police suspicion of him." *Id.* § 8.2(g), at 204; see also *Steigler v. State*, 277 A.2d 662, 667 (Del.1971) (actions of fully cooperative defendant amounted to implied consent to search and seizure: "One can hardly expect the police to get a search warrant for a

house or building when the owner is obviously cooperative and gives every appearance of being the victim, rather than the perpetrator, of a crime"); *State v. Fredette*, 411 A.2d 65, 70 (Me.1979) (defendant initiated police presence through urgent calls to police; invited them to enter home; and continually cooperated with police as they search home). . . . [Original emphasis.]

Numerous other jurisdictions have also accepted the doctrine of implied consent to search a crime scene.[2]

■ We will now adopt the reasonings employed by our sister States. We therefore hold that when a crime is reported to the police by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person, he or she implicitly consents to a search of the premises reasonably related to the routine investigation of the offense and the identification of the perpetrator. As long as the individual is not a suspect in the case or does nothing to revoke his consent, the police may search the premises for these purposes, and evidence obtained thereby is admissible. This implied consent is valid only for the initial investigation conducted at the scene and does not carry over to future visits to the scene.

**2.** See also *Lewis v. State*, 285 Md. 705, 717–21, 404 A.2d 1073, 1080–1081 (Md.1979) (defendant summoned police to house; was anxious to cooperate with investigation and willingly left house key with neighbor to give police access to premises); *Commonwealth v. Harris*, 387 Mass. 758, 443 N.E.2d 1287 (1982) (defendant genuinely consented in hopes that cooperative attitude would deflect police suspicion); *See United States v. Price*, 599 F.2d 494 (2nd Cir.1979) (valid search where defendant told police he did not care if they searched bag because it was not his and he had picked it up by mistake); *Thompson v. McManus*, 512 F.2d 769 (8th Cir.) (cooperative defendant assisted police by discussing robbery as motive for brutal assault on wife: sufficient to imply consent to second search of house). *cert. den.*, 421 U.S. 1014, 95 S.Ct. 2421, 44 L.Ed.2d 683 (1975). This Court wrote in *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App. 1976):

## IV. FACTS

■ In this case, appellant's behavior throughout the investigation indicated full approval of the police's actions. He indicated no desire not to cooperate. Appellant clearly was the owner of the house to be searched, and he was not a suspect in the case at the time of the search. He requested the police investigate a crime he claimed had been committed by a third person. He asserted that a robbery/murder had occurred and alerted the police that the victim's purse was missing, thus prompting the police officers' search for evidence relating to that crime. He expressed no reservations about the police conducting a search on his property.

Throughout this series of events appellant exhibited a cooperative attitude, speaking freely with and being consoled by the officers. The appellant never objected as the officers arrived at the scene and went into his home, nor did he ever indicate any objection to the officers conducting a search or hesitancy about the officers continuing their investigation on his property. Appellant presented no evidence of coercive or manipulative behavior on the part of any law enforcement official.

■ One of the detectives entered the garage to look at the victim's body and proceeded to search outside the house for evidence of the attacker. He then walked

The basic purpose of the Fourth Amendment, United States Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. [Citations omitted.] The same is true of Article I, Sec. 9 of the Texas Constitution, and it is well settled under the Fourth and Fourteenth Amendments of the United States Constitution that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." [Citations omitted.] See also *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Stoddard v. State*, 475 S.W.2d 744, 749 (Tex.Cr.App.1972). This Court noted five basic exceptions, the first being consent. *Id.* at footnote number 1. Consent must be freely and voluntarily given. The question of whether a consent to search is voluntary is a question of fact to be determined from the totality of all the circumstances. See *Schneckloth,* supra.

through an open door leading into the house. From an open door of the garage, one could directly view the open door leading into the home. On his second trip to the bedroom, the detective saw in plain view a purse on the dresser. He thought the purse might belong to the victim and opened it. The detective then checked to see if any officer had located the victim's missing purse. The detective ascertained that no identification of the victim had been found. He then returned to the bedroom and opened the purse. He found within the purse the appellant's job identification, a What-a-Burger receipt and cash. He initially believed the sole evidentiary value of the restaurant receipt to be a disclosure of the victim's whereabouts prior to the murder. The purse found was later determined to actually belong to appellant. The victim's purse was never found. The receipt proved to be a key element to refute the appellant's initial story of his whereabouts during the evening. Thus, if the investigating officer's entry into the house can be justified by some form of consent, then the search of the purse found in plain view is valid.

Appellant reported the crime to the police and caused their presence on his property to investigate his wife's apparent murder, and, according to him, a purported robbery because her purse was missing. He was not a suspect during the initial investigation. In an effort to locate evidence of the attacker, the investigating officer left the garage where her body was found and entered the home through open doors. The purse found in plain view in a bedroom and its subsequent search yielding incriminating evidence will not be suppressed because this was a search pursuant to implied consent.

## CONCLUSION

■ The court of appeals was correct in affirming the trial court's overruling of appellant's motion to suppress the evidence found when the detective entered the house. The issue of consent is ordinarily a factual issue for consideration of the courts of appeals and any claim of valid consent in this case is to be measured against the standards of *Schneckloth,* supra, and *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), consistent with our directions herein. See also *Thompson,* supra at 469 U.S. at 22, 105 S.Ct. at 412. The decision of the court of appeals is affirmed.

CLINTON, J., dissents.

WHITE, J., concurs in result.

MEYERS, Judge, concurring.

The issue presented here is whether Appellant impliedly consented to a search of his house by policemen investigating the murder of his wife. The trial judge determined Appellant consented, at least impliedly, and so denied his motion to suppress evidence seized during the search. Ultimately, the Dallas Court of Appeals agreed, and so do we. Along the way, however, we have imposed a rule of law which will most likely prove unworkable in practice and which is, in any event, not necessary in the present context.

This Court holds "that when a crime is reported to the police by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person, he or she implicitly consents to a search of the premises reasonably related to the routine investigation of the offense and the identification of the perpetrator." Op. at 182. Now, I agree that the evidence in this case is marginally sufficient to support the conclusion of the trial judge and of the appellate court that Appellant impliedly consented to the search of his house. And, because no one contends that either of the lower courts employed the wrong rule of law to reach this conclusion, it seems clear to me that the question here presented is one of fact. Under these circumstances, a new rule of law is not indicated, and Appellant's petition for discretionary review probably should have been refused by straightforward application of our recent precedents in the screening process. *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992).

But, given that we did grant review, I would treat the question presented as a challenge to the sufficiency of evidence proving consent. In my opinion, it is clearly wrong, and futile besides, to hold that consent to search throughout a private residence may always be inferred when a homeowner calls the police to investigate a crime allegedly committed at his house, even when such a search is "reasonably related" to that investigation. There are simply too many variables involved—too many possible circumstances which might affect the question of implied consent in subtle ways—for a court of last resort to announce a general rule governing the subject. Many unreasonable searches will surely come of this doctrine, and I do not wish to be associated with the rule allowing them.

I am satisfied that the only pertinent rule of law in the present context is that law enforcement officers may search a private residence if they have the actual consent of the owner, express or implied. Whether they had such consent in the instant cause is a question of fact which was resolved contrary to Appellant by the trial judge and by the Dallas Court of Appeals. In my view, the question is close. In most instances, I think it entirely unreasonable simply to assume that homeowners are willing to have the police rifle through their private homes and personal effects whenever they report the commission of a crime somewhere on their property. But Appellant in this case described circumstances to the police suggesting robbery as a motive for the murder of his wife, and he evidently invited a full investigation of the crime scene. Under the circumstances, it must have seemed to the investigators that the scene included, not only the garage where the body was found, but the residence itself, where the killing evidently occurred. Although I am not certain that I would have upheld the search myself, had I been the trial judge in this case, I cannot say that the evidence, together with rational inferences therefrom, is insufficient for a finding that Appellant impliedly consented to the limited search of his home actually conducted by the police.

Accordingly, while I cannot join the opinion of the Court, I do concur in its judgment to affirm the Court of Appeals.

McCORMICK, P.J., joins.