NO. 12-00-00120-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




PAUL DAVID ROGERS,
§
 APPEAL FROM THE 294TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 VAN ZANDT COUNTY, TEXAS







PER CURIAM


 Appellant Paul David Rogers appeals his conviction for Unlawful Possession of a Firearm
by a Felon, an offense for which he was assessed the punishment of three years in prison and a
$500.00 fine. Appellant complains of an illegal search and seizure. We affirm. 


Background Appellant filed a motion to suppress illegally seized evidence, namely his firearm. The trial
court held a hearing in which the arresting officer testified. Appellant's girlfriend, Glenda Hamilton,
with whom Appellant was living at the time in question, also testified. After hearing the evidence,
the trial court denied Appellant's motion to suppress. Appellant was tried by a jury and was found
guilty of the offense. This appeal followed.


Standard of Review A typical motion to suppress case alleging a lack of reasonable suspicion or probable cause
will be reviewed through a bifurcated standard of review. Guzman v. State, 955 S.W.2d 85 (Tex.
Crim. App. 1997). We will give almost total deference to a trial court's express or implied
determination of historical facts, and review de novo the court's application of the law of search and
seizure to those facts. Id. at 88 n.3 & 90-91. 

 When the trial court fails to file findings of fact, as in the instant case, we view the evidence
in the light most favorable to the trial court's ruling and assume that the trial court made implicit
findings of fact that support its ruling as long as those findings are supported by the record. State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000). The trial court is the sole judge of the credibility of the witnesses and the
weight to be given their testimony. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
An appellate court does not engage in its own factual review, but merely decides whether the trial
court's findings are supported by the record and whether the court properly applied the law to the
facts. Dean v. State, 938 S.W.2d 764, 768 (Tex. App.- Houston [14th Dist.] 1997, no pet.).

 The issue of a valid consent is to be measured against the standards of Schneckloth v.
Bustamonte, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Brown v. State, 856 S.W.2d
177, 180 (Tex. Crim. App. 1993). In Schneckloth, the Supreme Court held that the State must
demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion,
express or implied. Voluntariness is a question of fact to be determined from all of the
circumstances. Schneckloth, 412 U.S. at 248-49, 93 S. Ct. 2041 at 2059. A consent sufficient to
avoid the necessity of a warrant may be express or implied from the circumstances. Consent may
be "implied," because it is found to exist merely because of the person's conduct in engaging in a
certain activity. Brown, 856 S.W.2d at 181, citing W. LaFave, Search & Seizure: A Treatise on the
Fourth Amendment § 8.2(1), at 219 (2d ed. 1987). Taking this premise to its logical conclusion, 


 When a crime is reported to the police by an individual who owns or controls the premises to which
the police are summoned, and that individual either states or suggests that it was committed by a third
person, he or she implicitly consents to a search of the premises reasonably related to the routine
investigation of the offense and the identification of the perpetrator. So long as that individual is not
a suspect in the case or does nothing to revoke his consent, the police may search the premises for
these purposes, and evidence obtained thereby is admissible.


Brown, 856 S.W.2d at 181, quoting State v. Fleischman, 157 Ariz. 11, 754 P. 2d 340, 343-44 (Ariz.
App. 1988). 




Evidence Considered by the Court

 At the hearing on the motion to suppress, Michael Knapp, an ex-police officer with the Wills
Point Police Department, testified that he had received a report of a disturbance at an address on
North Commerce. When Knapp arrived at that location, he saw that the residence was a duplex. A
man, who he later identified as Appellant, was standing on the porch of the duplex. Knapp watched
as Appellant entered the door on the right side of the residence. The officer went to the left door and
knocked, at which time a different man opened the door. Knapp entered the apartment and saw a
woman, Glenda Hamilton, sitting on the couch "totally hysterical." Another woman was attempting
to calm her. Hamilton told Knapp that she and her boyfriend, Appellant, had gotten into a fight and
that he had thrown her out the door. Knapp went to Hamilton's duplex and knocked on the door. 
Appellant did not answer, but Knapp saw him through the window. Knapp went back to talk to
Hamilton, at which time she divulged that Appellant had a gun and that he had threatened her several
times with it, although not on this occasion. After learning that Hamilton lived in the duplex
wherein Appellant had barricaded himself, and that she paid the rent, Knapp asked her for
permission to go into the apartment. She said yes, because she wanted Appellant removed from the
premises. Knapp interpreted Hamilton's consent to mean "enter, find the subject and possibly find
the weapon." Knapp broke a pane of glass on the door and was reaching in to unlock the deadbolt
when Appellant opened the door. Appellant was immediately taken into custody and put into a
squad car. When he searched Appellant, Knapp discovered a TDC inmate card, indicating that
Appellant was a felon. 

 After Appellant was apprehended, Knapp entered the duplex and walked through the
residence in search of other individuals - in other words, he made a "protective sweep" of the
property. He saw an open closet door in a back bedroom. When he looked inside the closet, he saw
just a couple of articles of clothing, including a duster raincoat with a gun rug in its pocket. 
Protruding from the gun rug was a wooden pistol grip. Knapp testified that when he looked into the
open closet, the gun grip was within plain view. Knapp retrieved the gun rug and the weapon,
knowing that Appellant was a felon and was unlawfully in possession of the firearm. 

 Knapp stated at the hearing that he was doing a protective sweep of the house. However, he
admitted that he had not mentioned a protective sweep in any of his reports of the incident. Knapp
also testified that he believed he had consent to search for the weapon. But he acknowledged that
Hamilton never specifically asked him to get the gun out of the house. When asked why he believed
he had permission to search the house, Knapp stated, "Because Ms. Hamilton had advised me she
was the legal resident of that house, that Mr. Rogers was also at that house and that she wanted him
removed and she kept telling me, 'He has a gun. He has a gun.'"

 Hamilton testified at the suppression hearing that she had not called the police, but that her
neighbors did when they heard the altercation between her and Appellant. She stated that when
Knapp was knocking on the door to get Appellant's attention, she offered to try to get him to
surrender. Hamilton testified that Knapp told her not to come out or he would arrest her also, and
she felt threatened by this warning. She admitted to coming out on the porch several times before
Knapp finally told her he would arrest her if she did not stay inside. Later, when Knapp asked if he
could break out a window, Hamilton said, "I guess. Go ahead," because she "didn't know what to
say by this time." After entering the duplex, Knapp asked her, "Where's Paul's bedroom, and where
is the gun?" She showed him the bedroom, but indicated that she did not know where the gun was
located. 

 Hamilton stated that when Knapp was searching the apartment, the closet door in Appellant's
bedroom was closed, and that it was full of clothes. She also testified that she did not see a pistol
grip sticking out of the pocket of the duster. Further, Hamilton stated that Knapp did not seem
concerned that there might be someone else in the house. There were several rooms which he did
not search, but instead concentrated his search on Appellant's bedroom. After locating the gun,
Knapp discontinued his search of the residence. Hamilton testified that she did not recall ever telling
Knapp about Appellant's gun, but probably told the police dispatcher. 

 When asked if she felt that if she did not cooperate and give permission to go into the duplex
that she would have been arrested, Hamilton responded, "I possibly could have." She went on to
assert that permission to go into her residence was not given freely and voluntarily but, rather, under
duress. She also testified that it was not her intent for the officer to search her house. However,
Hamilton admitted that she was still in a relationship with Appellant, and that he would continue to
live with her when he got out of jail. 



Implied Findings

 We must view the evidence in the light most favorable to the trial court's ruling and assume
that the trial court made implicit findings of fact that support its ruling as long as those findings are
supported by the record. The implicit findings found by the trial court are: 1) Hamilton reported to
the police that she was assaulted and that Appellant was in possession of a gun, 2) Hamilton resided
in the duplex and had the right to consent to search, 3) Hamilton was not a suspect in any
wrongdoing, 4) Hamilton explicitly and voluntarily granted consent to enter her residence and
remove Appellant, 5) Knapp knew that Appellant was a felon and that he was in violation of the law
by possessing a firearm; and 6) Hamilton at no time revoked her consent to enter her residence. 


Application of Law to Facts 

 We must now conduct a de novo review to apply the law of searches and seizures to the facts
found in the record. In doing so, we give almost total deference to the trial court's implied
determination of historical facts. In the instant case, two crimes were reported to the police by
Hamilton - an assault and an unlawful possession of a firearm. Hamilton controlled the premises
to which the police were summoned. She stated that the crimes were committed by Rogers. In doing
so, Hamilton implicitly consented to a search of the premises reasonably related to the routine
investigation of the offenses. The police were authorized to search the premises for reasons of the
investigation, and to locate the firearm. The firearm, therefore, was admissible, and the trial court
correctly denied Appellant's motion to suppress. 

 We affirm the judgment of the trial court. 


Opinion delivered September 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.






(DO NOT PUBLISH)