Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



SERGIO GUTIERREZ, a/k/a
ARMANDO GUTIERREZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00315-CR

Appeal from the

243rd District Court

of El Paso County, Texas

(TC# 20030D04992)




O P I N I O N

           Appellant was convicted by a jury of attempted capital murder. The court assessed
punishment at life imprisonment in the Institutional Division of the Texas Department of
Criminal Justice and a $10,000 fine. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           On December 19, 1987, Rosa Gutierrez and Appellant, her spouse, lived at 9120
Plymouth, in El Paso County, Texas. Living with them were Rosa’s three children from a
prior marriage, Rosa Guardado, Manuel Guardado, and Fransico Guardado, and the two
children of their marriage, Ema Gutierrez, and Sergio Gutierrez, Jr. On the morning of
December 19, a Saturday, Rosa Gutierrez awoke and became aware that Appellant was not
in the house. She got into her car and went looking for Appellant because he had been out
drinking that night, and on prior occasions, he had been detained due to being in an
intoxicated state. She went to several places that Appellant frequented, and she found him
as he was leaving a friend’s house. They both returned home.
           After she had put out fresh clothes for Appellant to wear after his shower, she
informed Appellant that she was going to Juarez, Mexico to buy some sodas. Appellant told
her that she was to remain in the house, and Rosa Gutierrez responded that she had to go to
avoid lines at the port-of-entry bridge, and that if she did not go, no one else would. She
asked her son, Manuel, to go with her and they went to her car. Appellant followed and an
argument ensued outside by the car. He became angry and began using abusive and vulgar
language. Appellant grabbed her arm and tried to pull her out of the car. Manuel interceded
and told Appellant to let her go. Appellant then approached Manuel and he got into the car
and locked the door. Appellant began kicking the car doors and the two drove off.
           Rosa Gutierrez drove to a side street and stopped the car. Appellant sped by in his car
and she and Manuel returned to the house. When they got to the house, she refused Manuel’s
request to lock the doors, and he went to hide. She went to the living room and joined the
rest of the children. Appellant returned and stood in front of Rosa Gutierrez. He took a gun
from his jacket and he shot her in the head and twice in the arm.
           From another room, Manuel heard Appellant say some expletives and then he heard
six gunshots. After Appellant left, Manuel went into the living room and he saw blood
flowing from his mother’s head and body. He saw blood flowing from Rosa Guardado’s
shoulder and legs. Manuel called 911. When the police arrived, Manuel let them into the
house and he gave a statement.
           Francisco Guardado related that he saw Appellant shoot his mother and sister. 
Appellant then turned the gun on him. The gun clicked but did not fire. Franciso charged
Appellant and struggled with him. Franciso got away and Appellant left.
           The medical testimony at trial indicated that Rosa Gutierrez received superficial
wounds to the head and body. Rosa Guardado received several bullet wounds. One bullet
struck her spine and left her paralyzed in her lower extremities.
           Alan Mills, a detective with the El Paso Police Department, testified that he was
working as a patrol officer in December of 1987. He and his partner, Luis Serrano,
responded to the shooting at the Gutierrez home. When they arrived at the house, the EMS
personal were placing two people on stretchers into an ambulance. There were people in the
yard who were acting frantically. When Officer Mills determined that Appellant was a
suspect and had fled, he went to the Zaragosa Bridge, a local point of entry, and advised the
customs officers of what had happened to ensure that Appellant did not leave the country. 
He then returned to the crime scene and contacted other police units. Upon entry to the
house, he observed blood on the floors in rooms throughout the house. He observed a bullet
hole in a closet door.
           Officer Thomas Duran was also dispatched to the Gutierrez residence. He
interviewed various witnesses, and he determined that Appellant was the suspect. He
obtained three arrest warrants and sent flyers to all police stations and the local ports of entry. 
He also entered the warrants into the National Crime Information Center (NCIC), and the
Texas Crime Information Center (TCIC) databases. In pursuing his investigation, Officer
Duran attempted to locate Appellant at a night club and the hospital where the victims were
located.
           Juan Esparza testified that he was Appellant’s nephew. On the day of the shooting,
Appellant arrived at Esparza’s work site and asked him for a ride to the border. Appellant
stated that he wanted to visit his mother in Juarez, Mexico, but he did not want to drive his
vehicle across the bridge. Appellant left his car at the work site and Esparza drove Appellant
to the port of entry. At the bridge, Appellant exited the car, and Esparza drove away.
II. DISCUSSION
           In Issue No. One, Appellant asserts that the court erred in denying Appellant’s motion
to dismiss for lack of speedy trial in violation of the Sixth and Fourteenth Amendments of
the United States Constitution. The court held a pretrial hearing on Appellant’s motion to
dismiss for lack of speedy trial. An assistant municipal court clerk testified that three
warrants for Appellant’s arrest for attempted murder were issued on December 19, 1987. 
These three warrants were entered into the NCIC data base and the information was validated
each year to keep the warrants current.
           Detective David Samaniego testified that on October 22, 2003, the Cleburne, Texas
Police Department advised him that Appellant had been arrested and released on bond. 
Appellant was eventually arrested on the three warrants of attempted murder, and Appellant
was returned to El Paso County. He was indicted on October 23, 2003. Detective
Samaniego explained that Appellant had used different names to obtain driver’s licenses.
           Other witnesses described the attempts to locate Appellant. During the hearing, it was
determined that the investigating officers had never submitted Appellant’s fingerprints to the
Department of Public Safety to determine if Appellant was using a driver’s license under a
different name, or to the FBI to determine if Appellant had been arrested in another state. 
The case was eventually labeled a “cold case” because there were no leads to investigate. 
The court denied Appellant’s motion to dismiss.
           We first address the State’s contention that the speedy trial provisions of the state and
federal constitutions were not invoked because these provisions only apply if the accused is
under formal indictment, information, or arrest. We agree with this contention because
preindictment delay does not trigger either state or federal constitutional speedy trial
protection, but only state and federal constitutional due process protections. Spence v. State,
758 S.W.2d 597, 598 n.1 (Tex. Crim. App. 1988); State v. Horner, 936 S.W.2d 668, 670-71
(Tex. App.--Dallas 1996, pet. ref’d); Traylor v. State, 892 S.W.2d 447, 449 (Tex. App.--Beaumont 1995, pet. ref’d). The right to a speedy trial does not arise until the time the
defendant is formally accused or arrested. United States v. Lovasco, 431 U.S. 783, 786-89,
97 S.Ct. 2044, 2047-48, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 320-21, 92 S.Ct. 455, 463-64, 30 L.Ed.2d 468 (1971); Emery v. State, 881 S.W.2d 702, 708 (Tex.
Crim. App. 1994), cert. denied, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).
           In the present case, Appellant was not arrested until October of 2003, and he was
indicted on October 23, 2003. As stated, the Due Process Clause, not the Speedy Trial
Clause, provides protection for any delay before an arrest or indictment; the Speedy Trial
Clause provides protection for delay between arrest and indictment and between indictment
and trial. Brown v. State, 163 S.W.3d 818, 822 (Tex. App.--Dallas 2005, pet. ref’d). In the
trial court and in this Court, Appellant complains only of the preindictment delay. 
Accordingly, we need not consider whether any post-indictment delay violated the Speedy
Trial Clause. Id. Further, Appellant’s motions and arguments in the trial court and his
briefing on appeal do not assert that the preindictment delay violated the Due Process Clause. 
Accordingly, that issue is not before us. See id.; West v. State, 121 S.W.3d 95, 114 (Tex.
App.--Fort Worth 2003, pet. ref’d) (failure to object on ground of violation of constitutional
right to due process waives that ground); King v. State, 17 S.W.3d 7, 23 (Tex. App.--Houston
[14th Dist.] 2000, pet. ref’d) (op. on motion for reh’g) (failure to brief due process claim on
appeal waives error). Accordingly, Issue No. One is overruled in its entirety.
           In Issue No. Two, Appellant contends that the trial court erred in admitting evidence
that was obtained without a warrant. Specifically, Appellant argues that Officer Mill’s
testimony should have been suppressed regarding anything he saw or any evidence he
collected in the house because he did not have a warrant, and the State failed to establish any
facts to support the emergency doctrine or any other exception to the warrant requirement. 
           Officer Mills testified that after he and his partner arrived at the Gutierrez house, he
went to the port of entry to advise the customs officers of the situation while Officer Serrano
stayed at the house. When he got back to the house, he entered with the crime scene
investigation unit. He was aware that there were no victims in the house. However, because
family members were in the house, the door was open, and he was not stopped from entering
the house, he thought he had implied consent to enter. He did not have a warrant, he could
not remember if he asked for consent to enter the house.



           Officer Mills testified regarding how each room in the house looked. Appellant had
objected to this testimony on Fourth Amendment grounds, and the court overruled the
objection.
           The standard of review regarding a court’s ruling on the admissibility of evidence is
reviewed under an abuse of discretion standard. See Salazar v. State, 38 S.W.3d 141, 151
(Tex. Crim. App. 2001). Questions centering around search and seizure are reviewed with
deference to the trial court’s determination of historical facts supported by the record, but we
review the application of those facts to the law de novo. Carmouche v. State, 10 S.W.3d 323,
327-28 (Tex. Crim. App. 2000). The trial court’s ruling will be upheld if it is reasonably
supported by the record and is correct under any theory of law applicable to the case. State
v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).
           Both the Fourth Amendment of the United States Constitution and Article I, Section
9 of the Texas Constitution forbid unreasonable searches and seizures. See Brimage v. State,
918 S.W.2d 466, 500 (Tex. Crim. App. 1994); see also Mincey v. Arizona, 437 U.S. 385,
392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). This concept is so fundamental that the law
imposes a duty to exclude evidence seized in such illegal invasions, both to discourage
lawless police conduct, and because courts may not endorse lawless invasions of citizens’
constitutional rights by permitting the government unhindered use of the fruits of such
invasions. See Terry v. Ohio, 392 U.S. 1, 12-13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). 
Warrantless searches are unreasonable per se unless they fall under one of a few specific
exceptions. See Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000); see also
Mincey, 437 U.S. at 390. Consent to search is one of the well-established exceptions to the
constitutional requirements that a police officer have both a warrant and probable cause
before a search. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d
854 (1973).
           When a crime is reported to the police by an individual who owns or controls the
premises to which the police are summoned, and that individual either states or suggests that
it was committed by a third person, he or she implicitly consents to a search of the premises
reasonably related to the routine investigation of the offense and the identification of the
perpetrator. As long as the individual is not a suspect in the case or does nothing to revoke
his consent, the police may search the premises for these purposes, and evidence obtained
thereby is admissible. This implied consent is valid only for the initial investigation
conducted at the scene and does not carry over to future visits to the scene. Brown v. State,
856 S.W.2d 177, 182 (Tex. Crim. App. 1993).
           In the present case, the State sufficiently established that Officer Mills entered the
house legitimately under the above-mentioned exception to the warrant requirement. Manuel
Guardado called 911 to report the crime. Clearly, Appellant was a suspect as Officer Mills
went to the border area to head off Appellant’s escape. Clearly, Manuel Guardado was not
a suspect. Not only did Guardado not revoke his implied consent to enter the house to
conduct an investigation, he seems to have directly consented to the entry of Officer Mills. 
Issue No. Two is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

June 29, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)