IN THE
COURT OF CRIMINAL APPEALS

                                    OF
TEXAS

 

                                                              

                                                  No. PD-0534-05



 

                                 BARBARA
BELL JOHNSON, Appellant

 

                                                             v.

 

                                             THE
STATE OF TEXAS

 



               ON
APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

                               FROM
THE SIXTH COURT OF APPEALS

                                                   CASS
COUNTY



 

Johnson, J., filed a concurring
opinion in which Meyers and Price, JJ., joined.

 

 

                                   C
O N C U R R I N G   O P I N I O N

 








The record shows that, in response to a 9-1-1 call
reporting a shooting, Eric Jones, a police officer in Atlanta, Texas, arrived
at appellant=s home and found her at the door to the house in an
agitated state and still on the telephone with the 911 operator.  For security, Jones handcuffed appellant and
seated her in the back seat of his patrol car. 
He then made the first entry into the house and saw a pistol laying on a
kitchen counter and appellant=s husband lying on the living-room floor in front of
a fireplace.  Emergency medical personnel
arrived shortly thereafter and, with Jones, made a second entry into the
home.  Somewhat later, sheriff=s deputies arrived and made a third entry to process
the crime scene.  There is no dispute
that this entry and search were conducted without a warrant.

During the third entry, investigators took
photographs of the inside of the home and seized the pistol from the kitchen
counter and a spent shell casing that was discovered between a chair and the
wall in the living room.  Appellant filed
a motion to suppress the evidence that had been obtained at the scene without a
warrant. The objection was based on the Fourth Amendment to the United States
Constitution, Article I, Section 9, of the Texas Constitution, and Athe correlative provisions of the Texas Code of
Criminal Procedure.@  The trial
court overruled that motion, saying that the majority of the challenged
evidence was Anothing more than what Officer Jones could have testified
to as having been his personal observation of things in plain sight . . ..@  The trial
court also noted that appellant, while the search on the third entry was in
progress, asked Copeland if there was anything in the house that he wanted her
to show him.  It then opined that
appellant=s question constituted a consent to search.[1]

Appellant filed a petition for discretionary
review.  This Court granted ground one,
which asserts that the court of appeals erred in affirming the trial court=s denial of appellant=s
motion to suppress the evidence that was obtained as a result of an illegal
general search of her home.

The Pre-trial Motion to Suppress








 Several
months before the trial on the merits began, appellant filed a written Motion
to Suppress Statements of Defendant and Evidence.  That motion sought to suppress the statements
that appellant had made to any law-enforcement officer and any evidence confiscated
by a law-enforcement officer, including evidence that flowed from the search,
including testimony from the medical examiner and the trace-evidence examiner.[2]  The motion generally alleged that her
statements and the evidence seized at the scene were results of an illegal
search of appellant in violation of her constitutional and statutory
rights.  The docket sheet contains a notation:
APretrial suppression issue to be carried to the time
of trial.@

Just before the state began presenting its case,
appellant re-urged her suppression motion, objecting to the admission of any
physical evidence that was obtained during the third entry into the house.  The trial court noted the docket-sheet entry
about the pretrial suppression issue being carried until the time of trial and
decided that it would allow the state to introduce the evidence that appellant
had objected to, carry the objection, and hear more argument when court
recessed.  After the jury was excused for
the day, the trial court considered the suppression issue.

 Appellant and
the state stipulated that the search of appellant=s
residence during the third entry was done without a warrant and that no warrant
was ever obtained for the search. 
Appellant argued for suppression of all of the evidence, including
observations, diagrams, and photographs of the scene, that was obtained
after  Jones and the paramedics left the
house after the second entry.  After
hearing argument from both parties and then reviewing case law overnight, the trial
court denied the motion.








Appellant acknowledges that A[t]he Fourth Amendment permits a properly limited
protective sweep in conjunction with an in-home arrest when the searching
officer possesses a reasonable belief based on specific and articulable facts
that the area to be swept harbors an individual posing a danger to those on the
arrest scene.@  Appellant
argues that, after the protective sweep by 
Jones and the paramedics= determination that her husband was dead, the third
entry into the home without a warrant was improper and that the fruits of that
improper entry and search should have been suppressed.

The state, citing Mincey v. Arizona, 437 U.S.
385 (1978), argues that the Aemergency aid doctrine@ and
the prompt Aprotective sweep@
exceptions to the Fourth Amendment=s warrant requirement permit  police to seize evidence that was in plain
view during the course of these legitimate activities.  It asserts that A[i]n this case, the evidence collected at the scene
was clearly admissible because it was in the plain view of a law enforcement
officer during the course of his legitimate emergency activities, i.e.
searching for the victim and securing the safety of the area.@  The state
also asserts that the shell casing was within the plain view of Jones during
the permissible emergency search and protective sweep.[3]

The First and Second Entries








It is undisputed that the police made multiple
entries into appellant=s home. The first entry, by Jones alone, was a
permissible cursory search to secure the premises.  The second, by Jones accompanied by emergency
medical personnel, was to facilitate the administration of medical treatment to
the injured victim, and Jones testified that he did not do any investigation at
that time, but A[j]ust made sure there was nobody else there[.]@ The parties agree that the first two entries were
proper.

The Third Entry

The court of appeals noted that, to the extent that
deputies searched the home=s interior during the third entry, Athere is no viable exception to the constitutional
requirement that a search warrant be obtained[,]@ thus
the failure to suppress some of the disputed evidence so obtained was error. Johnson,
161 S.W.3d at 185.  It concluded that the
seized evidence, except the shell casing, had been in plain view during the
previous emergency sweeps and was thus lawfully seized during the third
entry.  Id. at 186.  The court of appeals also concluded that the
search during the third entry was broader than the scope allowed by the
plain-view exception and that the seizure of the shell casing and its fruits,
testimony referring to the shell casing and the portion of the diagram showing
where the shell casing was discovered, should have been suppressed in response
to appellant=s objections. 
Id.

Appellant takes issue only with the conclusion of
the court of appeals that the evidence that was seized during the third entry,
other than the shell casing, was in plain view during permissible entries and
therefore was properly seized.

Analysis

Mincey
teaches us that there is no Amurder-scene exception@ to
the warrant requirement.  AIn sum, we hold that the >murder scene exception=
created by the Arizona Supreme Court is inconsistent with the Fourth and
Fourteenth AmendmentsBthat the warrantless search of Mincey=s apartment was not constitutionally permissible
simply because a homicide had recently occurred there.@ Mincey, 437 U.S. at 395.








Brown v. Texas, 856 S.W.2d 177 (Tex. Crim. App. 1993), teaches us that if a crime Ais reported to the police by an individual who owns
or controls the premises to which the police are summoned, and that
individual either states or suggests that it was committed by a third person,
he or she implicitly consents to a search of the premises reasonably related to
the routine investigation of the offense and the identification of the
perpetrator.  As long as the
individual is not a suspect in the case or does nothing to revoke his
consent, the police may search the premises for these purposes, and evidence
obtained thereby is admissible.  Id.
at 182.  (Emphasis added.)  That is clearly not the case here.  Appellant had repeatedly confessed to
shooting her husband.  There was never
the slightest suggestion that anyone else was involved.

It is entirely reasonable to find implied consent to
search in the Brown circumstances, but not when there is a confession by
the person who is in control of the premises. 
Physical evidence can be ephemeral; if not collected quickly, it may
disappear.  It is fair to assume that an
owner who points to a third person as the perpetrator desires to have that
person caught and is therefore more than willing to let the police search the
premises for evidence.  It is also fair
to assume that such a premise may well not be true if the owner is a suspect
and the search might reveal incriminating evidence.  








 Unless the
existing circumstances support a finding that an exception to the warrant
requirement is present, police must have a warrant before they may search
without consent.  In this case, there was
no explicit consent.  Under Brown,
we may not assume implied consent in the circumstances present in this
case.  Appellant=s offer to show the officers things in the house was
made well after the search began without her consent and followed questions
from her about why all those people were in her house; her offer cannot be used
to justify a search that was already under way. 
There being no consent and no warrant, the third entry was improper.

Jones could have properly picked up the pistol on
either his first or second entry, as the gun was in plain view on the kitchen
counter and appellant had told him that she had shot her husband.  But he did not.  Jones and emergency medical technicians could
have testified as to what each had personally observed during the two proper
entries, but they  were not called as
witnesses; the state instead relied on Copeland=s
testimony about the photographs that were taken during the third entry.  Under Mincey and Brown, the
third entry was impermissible, and the trial court erred in admitting the
physical evidence collected during that entry. 
The error is of constitutional dimension, but is not structural.  The Court should, therefore, review the error
under to Tex. Rule App. Proc 44.2(a)
and consider whether the error requires reversal.  While I believe that the third entry was
improper, I do not believe that the error was harmful.

The Gun

The gun, a .380 caliber semi-automatic pistol, was
offered and admitted as State=s Exhibit 13. 
Its admission was improper as evidence seized during an unauthorized
search.  However, appellant told Jones
that she had used a .380.  Jones
testified that he had seen the gun on the kitchen counter during his first
entry and had identified it as a .380, and the medical examiner testified that
the victim died from a gunshot wound in the back and that he had removed a .380
slug from the victim=s thorax. 
Such other evidence supports a finding beyond a reasonable doubt that
the admission of the gun itself did not contribute to the conviction or
punishment.  For the same reasons, the
erroneous admission of State=s Exhibit 11, a photograph of a gun on a kitchen
counter beside the stove, was harmless error.

 








The Photographs

Appellant also objected to State=s Exhibits 2-8, 10, 12, 19, and 25.  These photographs  may be divided into two groups.  The first group consists of five photographs
of parts of the master bedroom.

Exhibit 6         a night stand in the bedroom,
purporting to show an empty handgun case

Exhibit 10       the bedspread, with an unidentified, dry
stain

Exhibit 12       the door jamb in the bedroom, damaged at
some unknown time

Exhibit 19       a view of the master bedroom

Exhibit 25       a view of the master bedroom

 

The shooting occurred in the living room.  There is no evidence of a struggle, in the
living room or elsewhere.  No connection
between the photographs of the bedroom and the murder was shown.  These photographs did not make any relevant
fact more or less likely and were thus irrelevant.  The trial court erred in admitting them, but
I believe, beyond a reasonable doubt, 
that the erroneous admission of these photographs did not contribute to
the conviction or punishment.

The second group consists of six photographs of the
living room, the site of the shooting.

Exhibit 2-5      the victim as he was found by responding
officers

Exhibit 7         a wider view of living room; the back
lower two-thirds of the victim is visible 

Exhibit 8         a large armchair with a red stain on
the back cushion

 

Exhibits 2 and 3 depict the victim from the front,
semi-prone on the floor, with no injury visible.  Exhibits 4, 5, and 7 depict the victim from
the rear and show a large, dark-red stain on his T-shirt, in the center of his
back, and a dark-red streak on the carpet. 
None of the six photographs is particularly gory or bloody.








Appellant repeatedly admitted that she had shot her
husband.[4]  She so testified at trial.  The issue before the jury was whether the
shooting was justified as an act of self-defense.  That issue was fully litigated through the
testimony of appellant, the medical examiner, and various witnesses for each
side who testified about the behavior of both appellant and the victim and the
nature of their relationship.[5]  The photographs in the second group did not
reveal any fact or circumstance not included in permissible testimony by one or
more witnesses, nor were they probative of the critical issue, self-defense.  They were admitted in error, but, beyond
reasonable doubt, the error did not contribute to the conviction or punishment.

I concur in the judgment of the Court.

 

 

Filed:
June 13, 2007

Publish











[1] It is undisputed that, at the time appellant asked
her question, the search was already underway. 
Although lack of consent was argued in appellant=s brief to this Court, the court of appeals did not
address the issue. AConsent@
obtained after the fact cannot justify failure to obtain a warrant.  Consent must also be clearly expressed.  Allridge v. State, 850 S.W.2d 471, 493
(Tex. Crim. App. 1991)(consent must be positive and unequivocal).  Appellant=s
question did not constitute consent to the search that was already in progress.





[2] At trial, appellant affirmatively stated she had Ano objection@ as to
the autopsy report, the autopsy photograph, the ballistics report, and the
trace-evidence report on the victim=s
clothing.  The ballistic and
trace-evidence reports each make reference to the pistol.  Appellant initially objected to a diagram of
appellant=s home prepared by officers involved in the third
entry, but later offered the diagram as defense exhibit 2.  





[3] The state also argues that, while appellant had previously objected to
the admission of any evidence that was obtained during the sheriff=s department=s investigation of the scene,
appellant Aspecifically stated that she had >no objection= to the admission of: the autopsy
report, the [autopsy] photo, or the ballistics report,@ and, therefore, waived her right
to complain on appeal about the admission of that evidence at trial. 

While stating Ano
objection@ to the admission of the ballistics firearms report
may waive any complaint about the admission of the report into evidence, it
does not waive properly preserved complaints about the admission of particular
pieces of evidence that are mentioned in the report.  The court of appeals noted that appellant may
have waived her objection as to the shell casing when her counsel affirmatively
said Ano objection@ to the
admission of the state=s exhibit that contained references to the shell
casing, but it also noted that the state did not raise such a claim. Johnson,
supra, 161 S.W.3d at 186, n.6.





[4] At different times, she told the emergency operator,
Officer Jones, and Lt. Copeland that she had shot her husband.





[5] It was generally conceded that both appellant and her
husband were alcoholics.  As would be
expected, witnesses for the state testified that they had never seen the victim
be violent toward anyone.  Some of
appellant=s witnesses testified as to damage to appellant=s home that was inflicted by the victim when he was
angry; other witnesses, including a law-enforcement officer, testified as to
prior assaults on appellant by the victim.