**Joey Kirk WHISENHUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00660–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 2003.

Rehearing Overruled Oct. 17, 2003.

Travis B. Bryan, III, Bryan, Stacy & Dillard, L.L.P., Bryan, for Appellant.

Craig M. Greaves, Bryan, Stacy & Dillard, L.L.P., Bryan, for appellee.

Panel consists of Justices HEDGES, TERRY JENNINGS, and ELSA ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Joey Kirk Whisenhunt, was charged with the offense of possession of marihuana in an amount less than two ounces. After a hearing at which appellant's motion to suppress evidence was denied, appellant pleaded guilty to the offense, and, in accordance with a plea agreement, the trial court placed appellant on two years' probation and imposed a $1,500 fine.

In five points of error, appellant contends that the trial court erred in denying his motion to suppress evidence because the search of his private bedroom and the seizure of marihuana located therein violated his right to be free from unreasonable searches and seizures.[1] We affirm.

## Background

While appellant was out of town, his trailer home was burglarized. His roommate, Bradley Wunderlich, reported the burglary of the trailer to the Bryan Police Department, and Officer Garland Davis was dispatched to the scene. Wunderlich invited Davis into the trailer, told him that the trailer had been burglarized, and consented to Wunderlich's processing of the trailer for evidence of the burglary, including the lifting of possible fingerprints.

Davis was "shown around" the trailer by Wunderlich and observed that the trailer home had been ransacked. Wunderlich gave Davis an inventory of what was missing from his bedroom and what he thought

was missing from the living room. Wunderlich did not know what, if anything, was missing from appellant's bedroom. Wunderlich told Davis that appellant owned the trailer and was out of town on a hunting trip.

Davis dusted for fingerprints in the living room, in Wunderlich's bedroom, and in appellant's bedroom. According to Davis, appellant's bedroom door was not locked, but he could not recall if the door was opened or closed when he entered the room.

Davis observed that appellant's bedroom had also been burglarized and ransacked. Appellant's computer table had been pulled away from the wall, the computer terminal was turned around, drawers had been pulled open, and boxes were pulled from inside the closet. Davis noticed a jewelry box on appellant's nightstand with an open lid "as if someone had rummaged through the box" and dusted it for fingerprints. While lifting the upper tray of the jewelry box to determine whether the items in the box were still in place or had been stolen, Davis discovered marihuana in the bottom of the box. Beneath the marihuana was a document bearing appellant's name. Davis seized the marihuana and told Wunderlich that marihuana was found in appellant's bedroom.

At the motion to suppress hearing, Davis testified that he believed that Wunderlich's permission to process the trailer included permission to process appellant's bedroom. Davis stated that he did not know whether appellant used the bedroom exclusively or whether appellant had given Wunderlich prior consent to use appellant's bedroom or the personal belongings in the bedroom. Davis acknowledged that he did not have a warrant to search appel-

1. See U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, § 10.

lant's bedroom, but stated that he did not believe one was necessary because he was inside the trailer at Wunderlich's invitation and was processing the bedroom as part of the overall scene of a burglary in which appellant was a victim and not a suspect. Davis said that his sole purpose in entering appellant's bedroom was to process for fingerprints while conducting an investigation of the burglary.

Appellant testified that he rents a bedroom to Wunderlich pursuant to an oral lease agreement. Appellant admitted that the marihuana was his, but testified that he did not give his roommate or Officer Davis permission to enter his room to search for evidence of the burglary.

### Discussion

In five points of error, appellant contends that the trial court erred in denying his motion to suppress the marihuana found in his bedroom. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject all or any part of a witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980). In reviewing the trial court's ruling on a motion to suppress, an appellate court does not engage in its own factual review and determines only whether the record supports the trial court's fact findings. *Romero*, 800 S.W.2d at 543. If the trial court's fact findings are supported by the record, an appellate court may not disturb the findings unless the trial court abused its discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). On appellate review, we address only the question whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543.

In denying appellant's motion to suppress, the trial court found that, although Davis conducted a warrantless search of appellant's bedroom, his search was reasonable because (1) Wunderlich had "apparent authority" to authorize a search of appellant's bedroom, (2) appellant "impliedly consented" to the search, and (3) Davis reasonably conducted a criminal investigation at the scene of a crime. Because we find that Davis conducted his search pursuant to Wunderlich's apparent authority to consent to the search, we will affirm the judgment of the trial court.

### Apparent Authority

Under the Fourth Amendment, all warrantless searches inside a home are unreasonable per se unless the State proves that the particular search falls within a recognized exception to the constitutional requirement for a warrant. *United States v. Karo*, 468 U.S. 705, 714–15, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984); *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App.2000). A warrantless search by law enforcement officers does not violate the Fourth Amendment's guarantee against unreasonable searches and seizures if the officers have obtained the consent of a third party who possesses common authority over the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). "Common authority" rests on "mutual use of property by persons generally having joint access or control for most purposes." *Id.*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. A third party who has equal control over and equal use of the premises being searched may properly consent to a search of those premises. *Becknell v. State*, 720 S.W.2d 526, 528 (Tex.Crim.App.1986).

When the facts do not support a finding of actual authority, a search

maybe reasonable if the consent-giver *apparently* has authority. *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). In *Rodriguez*, the Supreme Court adopted the apparent-authority doctrine, holding that a warrantless search of a person's premises by law enforcement officers does not violate the Fourth Amendment when the search is based upon the consent of a third party whom the officers reasonably believe at the time of the search to possess common authority over the premises, but who in fact does not possess such authority. *Id.*, 497 U.S. at 186–89, 110 S.Ct. at 2800–01. As the Supreme Court stated, a third party's consent is valid if "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Id.*, 497 U.S. at 188, 110 S.Ct. at 2801. The State has the burden to prove apparent authority. *Id.*, 497 U.S. at 181, 110 S.Ct. at 2797. The burden is not met if law enforcement officers faced with an ambiguous situation nevertheless proceed without making further inquiry. *Id.*, 497 U.S. at 186–89, 110 S.Ct. at 2800–01. If the officers do not learn enough and if the circumstances fail to clarify whether the property is subject to common authority by the consent-giver, then the warrantless search is unlawful. *Id.*

In overruling appellant's motion to suppress, the trial court concluded that it was reasonable for Davis to believe that Wunderlich's authority to consent to the fingerprinting and processing of the common areas of the trailer extended beyond those areas and into appellant's bedroom. We conclude that the trial court did not abuse its discretion in determining that Davis reasonably believed that Wunderlich had apparent authority to give consent to enter appellant's bedroom.

The trial court focused on the reasonableness of Davis's and Wunderlich's actions. Wunderlich led Davis to appellant's bedroom. As Davis testified, "Mr. Wunderlich pointed me toward his roommate's bedroom, advised me that it appeared that things were askew, things were not left the way he normally leaves his room. That's what prompted me to go toward his bedroom and investigate." The record reflects that Wunderlich did not give Davis separate consent to enter appellant's bedroom apart from the consent for the remainder of the trailer. Wunderlich did, however, lead the officer to appellant's room. Given that conduct, it was reasonable for the officer to conclude that the consent for the trailer included appellant's room.

According to Davis, Wunderlich consented to his entering the trailer, consented to the processing of the trailer, and made no restrictions on either consent. As the trial court noted, ". . . it was clear and obvious to Officer Davis that the Defendant's bedroom had been ransacked and was, therefore, part of an overall crime scene." Not only did Wunderlich give consent to have Officer Davis enter and process the trailer, the record further reflects that Wunderlich specifically sought police assistance into the appellant's room and not merely as to the common areas of the trailer.

In addition to concluding that Wunderlich led Davis to appellant's bedroom, the trial court further concluded that it was reasonable for Davis to believe that appellant had expressly or impliedly consented to Wunderlich's request for assistance from police officers. As the court emphasized, ". . . it is reasonable to believe that an absent roommate would want a law enforcement officer to do a thorough investigation of the crime scene as quickly as possible based upon the consent of the other roommate there on location, in the

event the roommate's apartment or house or mobile home were the scene of a crime, assuming that neither roommate was the accused or the object of that crime being investigated." It was reasonable for Davis to believe that, because appellant and Wunderlich were victims of a burglary and shared a common loss due to the acts of an unknown third party, Wunderlich had authority to consent to the officer's search for evidence of the burglary in appellant's room. Given Wunderlich's conduct, both in leading the officer to appellant's bedroom and in showing the officers the signs of the burglary in the bedroom, Davis could reasonably believe that the roommates had the type of relationship that would permit access into each other's bedrooms in an extraordinary circumstance like the burglary that occurred here, in much the same manner as if the home had flooded or if a fire had occurred.

In focusing on Davis's motives in entering appellant's bedroom, the trial court noted that neither Wunderlich nor appellant was a target of an investigation or suspected of an offense.[2] In entering the bedroom, Davis's stated purpose was simply to assist appellant in pursuit of the burglars. The court noted that it would be illogical to believe that appellant or Wunderlich had burglarized their own home and, therefore, neither appellant nor Wunderlich was suspected of any offense when the officer entered appellant's bedroom.

The trial court determined that Davis's actions in searching the jewelry box were reasonable because the "jewelry box is a logical attraction to a burglar." The court noted,

In plain view for the Officer to see, the tray to the jewelry box was empty. It was reasonable (logical) for the Officer to conclude that the jewelry box had been part of the burglar(s)'s prey and it was logical for the Officer to dust for fingerprints.

We conclude that Davis's actions did not exceed the scope of the investigation of the burglary that he was invited to investigate.

Appellant relies on this Court's opinion in *Corea v. State*, 52 S.W.3d 311 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd), to challenge Wunderlich's consent. We conclude *Corea* is factually distinguishable. *Corea* involved the State's attempt to validate a warrantless search conducted with the consent of a third party whom the State alleged had apparent authority. *Id.* at 315. After police officers received a tip that the defendant possessed stolen property, the officers went to the defendant's apartment and received written consent to search the apartment from the defendant's brother-in-law, who was a resident of the apartment. The officers then conducted a search of the defendant's bedroom and discovered a paper bag containing cocaine. The trial court found that the brother-in-law had apparent authority to consent to the search and denied the defendant's motion to suppress. *Id.* at 314–15.

In reversing the trial court's judgment, we first noted that the State presented no evidence to show that the defendant gave his brother-in-law explicit or implicit consent to enter or use the defendant's bedroom. *Id.* at 316. Furthermore, we noted that the State presented no evidence that the brother-in-law ever entered the defendant's bedroom, with or without the defendant's consent. *Id.* We therefore held that once the officers received notice that the defendant lived in the bedroom, the officers were obligated to investigate further

---

**2.** The right to be free from unreasonable searches extends beyond those who are suspected of criminal behavior. *Camara v. Municipal Court*, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *United States v. Erickson*, 991 F.2d 529, 531–32 (9th Cir. 1993).

to determine if the brother-in-law truly had authority to consent to a search of the bedroom. *Id.* at 317. Because the officers did not investigate further, we reversed the judgment of the trial court. *Id.* at 318; *see also Riordan v. State,* 905 S.W.2d 765, 772 (Tex.App.-Austin 1995, no pet.) (holding that baby-sitter living in home connected via ramp to defendant's home had no authority to consent to search of defendant's home); *Reynolds v. State,* 781 S.W.2d 351, 355 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (holding that child residents had no actual or apparent authority to consent to search of mother's home).

Unlike *Corea,* appellant was never suspected of a crime. He was a victim. In *Corea,* the officers initiated the police contact with the home occupants. *See Corea,* 52 S.W.3d at 314. Here, Davis responded to Wunderlich's call for assistance and was invited into the home by Wunderlich, who led Davis to appellant's bedroom to investigate the burglary. There were no extraordinary circumstances in *Corea* that correspond to the circumstance of the burglary here and that would cause an officer to believe that a roommate who was not present would want the police action requested by a roommate who was present.

We are persuaded that the circumstances presented here are similar to those in *Illinois v. Rodriguez.* In *Rodriguez,* the officers were granted access inside a home by a woman who represented that the apartment was "our[s]" and that she had clothes and furniture there. 497 U.S. at 180, 110 S.Ct. at 2797. The woman unlocked the door with her key and gave officers permission to enter. *Id.* She did not, however, have actual authority to consent to the officer's entry because she had moved out of the apartment and was not living there. *Id.* After noting that it was not clear whether the woman told the officers that she currently lived at the apartment or that she merely lived there once, the Court held that searches could be valid under the apparent authority rationale. *Id.,* 497 U.S. at 188, 110 S.Ct. at 2801. As the Court instructed, "Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Id.,* 497 U.S. at 186, 110 S.Ct. at 2800. Because many situations that confront officers in the course of executing their duties "are more or less ambiguous, room must be allowed for some mistakes on their part." *Id.* (citing *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). Mistakes, however, "must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* (citing *Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311).

As addressed above, Davis was reasonable in searching appellant's bedroom because, as in *Rodriguez,* he was led to the room by a person who appeared to have authority to consent to the search. *See id.,* 497 U.S. at 188, 110 S.Ct. at 2801. We thus conclude that the trial court did not abuse its discretion by finding that the State met its burden of proof to establish that Davis acted reasonably under the circumstances by relying on Wunderlich's apparent authority to consent to the search. Because the court's ruling can be upheld on the grounds of apparent authority, we need not address appellant's other contentions, in which he challenges the trial court's finding of a crime scene exception and implied consent.

### Conclusion

We affirm the judgment of the trial court.

Justice TERRY JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

There is no evidence in the record of this case that *anyone* positively and unequivocally consented to a search of appellant's belongings in his bedroom. The Constitution of the United States, the Texas Constitution, and the well-established precedent of the United States Supreme Court and of the Texas Court of Criminal Appeals compel the suppression of the evidence seized in this case. Accordingly, I respectfully dissent.

## Background

The facts pertinent to appellant's motion to suppress evidence are summarized in Defendant's Exhibit 1, Officer Shawn Davis' sworn Probable Cause Statement:

On 12–02–01 ... I[,] Officer Shawn Davis ... of the Bryan Police Department, was dispatched to ... a report of a burglary of [a] residence. Upon arrival at [the residence] I contacted resident, Bradley Joe Wunderlich ... who advised me that he and his roommate's trailer had been burglarized.... The trailer was entered by unknown subject(s) and several electronic items were stolen. Wunderlich advised that his roommate, [appellant] ..., was out of town on a hunting trip.

Upon gathering some information from Wunderlich I began to process the scene for fingerprints and any other evidence left behind by the burglar(s). I began processing in the living room [and] then proceeded to Wunderlich's bedroom. I then went to [appellant's] bedroom. It was very obvious that the burglar(s) had been in his room.... I began processing [appellant's] room for any evidence. I noticed that a small wooden jewelry box had the lid left open as if someone had

rummaged through it. I processed the box for any fingerprints. *I lifted the upper tray of the box to see if the items in the box were still in place or had been stollen* [sic].[1] As I looked into the box I noticed a plastic baggie with a green leafy substance inside. The substance was cosistant [sic] with that of marijuana, so I removed the object from the box and examined it further. The substance had the unmistakable odor of marijuana. I then took custody of the suspected marijuana. I looked further into the box and found a [Texas A & M University] degree plan with [appellant's] name and social security number directly under where I found the suspected marijuana [sic].

Under direct examination by appellant, Officer Davis testified that when he arrived at the trailer, Wunderlich told him that "his roommate's trailer had been burglarized" and that appellant was out of town on a hunting trip. Davis also testified that there were "no exigent circumstances" at the time of his investigation and that the marihuana was "not in plain view." In regard to the issue of consent to search, Davis testified unequivocally:

[Appellant's Counsel]: Did you get Mr. Wunderlich's consent to go into the bedroom of [appellant]?

[Officer Davis]: No.

There is no evidence in the record that Davis asked for and received permission from anyone to go through appellant's personal belongings.

Appellant testified that he owned the trailer and that Wunderlich paid him monthly rent for the use of a bedroom and the common areas of the trailer. Appellant also testified that he never gave any-

---

**1.** The record does not reveal how Officer Davis could have possibly made this determi- nation given appellant's absence from the scene.

one consent to enter his bedroom and he objected to Officer Davis's entry into his bedroom "at all because it's my private property." Only after Davis had seized the marihuana from appellant's jewelry box and left the trailer did Wunderlich contact appellant on appellant's cell phone and inform him of the burglary and that Davis had seized the marihuana.

In denying appellant's motion to suppress evidence, the trial court found that, although Officer Davis conducted a warrantless search of appellant's bedroom, this search was reasonable because (1) Wunderlich had "apparent authority" to authorize a search of appellant's bedroom, (2) appellant "impliedly consented" to the search, and (3) Davis reasonably conducted a criminal investigation at the scene of a crime.

The majority opinion concludes that "the trial court did not abuse its discretion by finding that the State met its burden of proof to establish that [Officer] Davis acted reasonably under the circumstances by relying on Wunderlich's apparent authority to consent to the search."

## Standard of Review

A trial court's ruling on a motion to suppress evidence will not be set aside unless there is an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We will afford almost total deference to a trial court's determination of facts supported by the record, especially when the findings are based on the evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Because we do not determine credibility, our de novo review of consent and mixed questions of law

and facts becomes a de novo review of legal questions. *Spight*, 76 S.W.3d at 765 (citing *Ornelas v. United States*, 517 U.S. 690, 697–99, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996)).

## Search and Seizure

Appellant contends that the trial court erred in denying his motion to suppress evidence because Officer Davis's search of appellant's personal belongings violated the protections of the United States and Texas constitutions against unreasonable searches and seizures.

The Code of Criminal Procedure provides that "No evidence obtained by an officer or other person in violation of any provisions on the Constitution or laws of the State of Texas, or Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003). Moreover, "all evidence obtained by searches and seizures in violation of the [United States] Constitution is ... inadmissible in a state court" under the federal exclusionary rule, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment.[2] *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

The United States Constitution guarantees that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Texas Constitution likewise provides that, "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches...." TEX. CONST. art. I, § 9.

---

**2.** U.S. CONST. amend. XIV.

Under our law, all warrantless searches are presumed to be unreasonable. As noted by the Texas Court of Criminal Appeals:

> The basic purpose of the Fourth Amendment, United States Constitution, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *See Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Haynes v. State,* 475 S.W.2d 739 (Tex.Crim.App.1971); *Brown v. State,* 481 S.W.2d 106 (Tex. Crim.App.1972). The same is true of Article I, Sec. 9 of the Texas Constitution, and it is well settled under the Fourth and Fourteenth Amendments of the United States Constitution that *a search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 454, 455, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Stoddard v. State,* 475 S.W.2d 744, 749 (Tex.Crim.App. 1972).

*Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim. App.1976) (emphasis added). One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Id.* (citing *Schneckloth,* 412 U.S. at 219, 93 S.Ct. at 2043–44). The protections afforded by the Fourth Amendment and Article I, section 9 of the Texas Constitution may be waived by an individual consenting to a search. *Kolb,* 532 S.W.2d at 89.

When relying upon consent to justify the lawfulness of a search, the State has the burden to prove free and voluntary consent "by clear and convincing evidence." *Id.* (citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)). The burden "requires the State to show that the consent given was positive and unequivocal." *Kolb,* 532 S.W.2d at 89–90. The burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Id.* at 90 (citing *Bumper,* 391 U.S. at 548, 88 S.Ct. at 1792). Moreover, "consent to search is not to be lightly inferred." *Kolb,* 532 S.W.2d at 90.

Here, there is no "clear and convincing" evidence that Wunderlich, or anyone else, "positively and unequivocally" consented to any kind of search. As noted above, Officer Davis testified that he did not obtain Wunderlich's consent to go into the bedroom of appellant. Moreover, although Davis testified that he believed he had Wunderlich's consent to process the entire trailer for fingerprints, there is no evidence in the record that Wunderlich consented to any search of the trailer, of appellant's room, or of appellant's jewelry box. In fact, Officer Davis testified "I didn't consider it a search. I was there processing." These undisputed facts alone compel the suppression of the evidence seized in this case.

Disregarding Officer Davis's testimony, the State argues, and the majority agrees, that it was reasonable for Davis to believe that "Wunderlich had authority to consent to [Davis'] search" of appellant's jewelry box in appellant's bedroom because appellant and Wunderlich were "victims of a burglary," Davis was "shown around" the trailer by Wunderlich, and Wunderlich gave Davis consent to "process" the trailer for fingerprints. With all due respect, this does not constitute any evidence of a con-

sent to search. The United States Constitution, the Texas Constitution, and the applicable case law require much more.

### Apparent Authority

Assuming that Wunderlich "positively and unequivocally" consented to a search, the trial court did not find, and the State does not contend, that Wunderlich had "actual authority" to consent to the search of appellant's jewelry box in his bedroom. Rather, the trial court found, and the majority agrees, that Officer Davis reasonably believed that Wunderlich had "apparent authority" to consent to the search of appellant's jewelry box in appellant's bedroom.

If the facts of a case do not support a finding of "actual authority," a search may still be considered reasonable if the person giving consent to search "apparently" had actual authority to do so. *Corea v. State*, 52 S.W.3d 311, 317 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)). A warrantless search by law enforcement officers of a person's premises does not violate the proscription of unreasonable searches and seizures when such a search is based upon the consent of a third-party whom the officers, at the time of the search, reasonably believe to possess common authority over the premises, but who in fact does not possess such authority. *Corea*, 52 S.W.3d at 317 (citing *Rodriguez*, 497 U.S. at 186–89, 110 S.Ct. at 2800–01). However, police officers may not rely upon "consent given in ambiguous circumstances or that clearly appears unreasonable." *Corea*, 52 S.W.3d at 317 (citing *Rodriguez*, 497 U.S. at 186–89, 110 S.Ct. at 2800–01). As we noted in *Corea:*

> The apparent authority doctrine for consenting to a search should not be applied so strictly that it becomes unworkable and places too heavy a burden on police.

The rule, however, does not allow law enforcement officers to proceed without inquiry into ambiguous circumstances or to always accept at face value the consenting party's apparent assumption or claim of authority to allow the contemplated search.

*Corea*, 52 S.W.3d at 317 (citing *Riordan v. State*, 905 S.W.2d 765, 771 (Tex.App.-Austin 1995, no pet.)).

The State bears the burden of proving that the person who gave consent had the actual or apparent authority to do so. *Corea*, 52 S.W.3d at 317 (citing *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797). This burden, as a matter of law, cannot be met if an officer, faced with an ambiguous situation, nevertheless proceeds without making further inquiry. If an officer does not learn enough and if the circumstances make it unclear whether the property is subject to "common authority" by the person giving consent, "then warrantless entry is unlawful without further inquiry." *Corea*, 52 S.W.3d at 317 (quoting *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801).

Here, appellant, relying on our rationale in *Corea*, argues that the State failed to meet its burden to prove that Wunderlich had apparent authority to consent to the search of appellant's jewelry box in his bedroom. The majority concludes that *Corea* is "factually distinguishable." I agree that *Corea* is factually distinguishable, although for an entirely different reason— here, there is no evidence in the record before us that anyone "positively and unequivocally" consented to any kind of a search at all. Nevertheless, even if there was some evidence in the record of consent to search (again, there is not), *Corea* would not be substantively distinguishable.

The issue in *Corea* was whether the State met its burden of proving that the defendant's brother-in-law had actual or

apparent authority to consent to a search of the defendant's bedroom in the defendant's apartment. In the course of a burglary investigation, police officers received information that the defendant possessed stolen property. *Corea*, 52 S.W.3d at 314. The officers went into the defendant's apartment, and his brother-in-law gave the officers written consent to search the apartment. *Id.* When the officer's searched the defendant's bedroom, they found a bag containing cocaine in the defendant's closet. *Id.* The trial court held that the brother-in-law had apparent authority to consent to the search and denied the defendant's motion to suppress evidence. *Id.* at 315.

We reversed the trial court's judgment "because the State did not sustain its burden to establish that [the brother-in-law] had actual or apparent authority to consent to the search." *Id.* at 317. We noted that the brother-in-law's authority to consent to the search of the defendant's bedroom "became ambiguous once he told the officers no one other than [the defendant] lived in [the defendant's] bedroom." *Id.* At that point, the officers were "obligated to investigate further to determine if [the brother-in-law] truly had the authority to consent to a search of the bedroom." *Id.*

In this case, as in *Corea*, the State presented no evidence that appellant had ever explicitly or impliedly given Wunderlich consent to enter or use appellant's bedroom. Furthermore, as did the officers in *Corea*, Officer Davis received notice that appellant owned the trailer home and lived in the bedroom in question. In light of Davis's knowledge that appellant owned the trailer and lived in the bedroom, and without any statement or action from Wunderlich to indicate that he exercised

mutual use or common authority over appellant's bedroom, Davis was obligated to investigate further to determine if Wunderlich truly had the authority to consent to the search of appellant's jewelry box in appellant's bedroom. *Corea*, 52 S.W.3d at 317. Because Davis failed to do so, the warrantless search in appellant's bedroom cannot be validated under the apparent-authority doctrine. *See id.*

The majority erroneously concludes that *Corea* is inapplicable because here, appellant was "never suspected of a crime. He was a victim." The majority notes that Wunderlich called for assistance and invited Officer Davis into appellant's trailer. This is simply a distinction without a difference. Surely, the protections against unwarranted government intrusions afforded by the United States and Texas constitutions apply to crime victims as well as to suspects. The right to be free from unreasonable searches does not extend only to those who are suspected of criminal behavior. *Camara v. Mun. Court of City and County of San Francisco*, 387 U.S. 523, 530, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930 (1967); *United States v. Erickson*, 991 F.2d 529, 531–32 (9th Cir.1993). The State still had the burden of proof to justify the warrantless search. *Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797. Yet, as in *Corea*, the State did not present Wunderlich's testimony, did not attempt to do so, and did not explain his absence, even though the State was relying on Wunderlich's apparent authority to justify the search. *See Corea*, 52 S.W.3d at 318. Again, as noted above, Officer Davis testified that he did not receive Wunderlich's consent to enter appellant's bedroom.[3]

---

**3.** Accordingly, the majority's reliance on *Rodriguez* in affirming the trial court's judgment is misplaced.

Writing for this Court, Justice Murry Cohen stated that, "No expectation of privacy is more reasonable than that which is given to one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government." *Reynolds v. State,* 781 S.W.2d 351, 355 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (holding that child cannot consent to search of parent's bedroom). The same logic applies to roommates as well as to children. Here, the State simply did not meet its burden to prove that the apparent-authority doctrine is applicable under the facts of this case.

### Implied Consent

Even without valid consent from a third-party, police officers may, in some instances, search the immediate area of a crime under the doctrine of implied consent. In *Brown v. State,* the Court of Criminal Appeals adopted the implied-consent doctrine, holding:

> [W]hen a crime is reported to the police by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person, he or she implicitly consents to a search of the premises reasonably related to the routine investigation of the offense and the identification of the perpetrator. As long as the individual is not a suspect in the case or does nothing to revoke his consent, the police may search the premises for these purposes, and evidence obtained thereby is admissible.

*Brown v. State,* 856 S.W.2d 177, 182 (Tex. Crim.App.1993). Here, the trial court relied on *Brown* in finding that appellant implicitly consented to the search of his bedroom.

The implied-consent doctrine does not apply in this case. The critical distinction between the instant case and *Brown* is that, in *Brown,* the defendant himself summoned the police to investigate a crime that occurred on premises that the defendant owned and controlled. *Id.* at 179. In this case, Wunderlich, a third-party, summoned the police to appellant's trailer, and, in the course of a criminal investigation, Officer Davis performed a search of appellant's jewelry box in appellant's bedroom, which was neither owned nor controlled by Wunderlich. This is quite different from the context associated with implied consent, in which a defendant initiates police contact with the mistaken belief that his cooperative posture can divert or prevent police suspicion of him. *Id.* at 181.

A person impliedly consents to a search by engaging in certain activities that, by their very nature, involve a diminished expectation of privacy. *See id.* The State has not identified any conduct by appellant that would somehow imply that appellant initiated police contact or consented to a search of his bedroom. In addition, the State has cited no authority holding that a third-party may impliedly consent to a search of property over which the third-party exercises no control. This Court cannot conclude, as the State seemingly suggests, that Wunderlich, acting on behalf of appellant, impliedly consented to the search. Thus, the State has not met its burden to prove that the implied-consent doctrine is applicable to the facts of this case.

### "Crime–Scene" Exception

As a third ground to justify the warrantless search, the trial court found that it was reasonable for Officer Davis to search appellant's jewelry box while conducting a criminal investigation of a crime committed against appellant. However, as noted above, warrantless searches are unreasonable per se unless the State proves that the particular search falls within a recognized exception to the constitutional re-

quirement of a warrant. *Kolb,* 532 S.W.2d at 89 (citing *Katz,* 389 U.S. at 357, 88 S.Ct. at 514). Because of society's interest in investigating burglaries, the State argues that we should recognize a "crime-scene" exception to the warrant requirement, whereby law enforcement officers may conduct warrantless searches on private premises where a burglary has recently taken place. This is not a proper function of an intermediate appellate court, and we do not have the authority to judicially create such an exception.

Despite the State's request, the Supreme Court has rejected the contention that a "crime-scene" exception exists under the warrant requirement. *See Mincey v. Arizona,* 437 U.S. 385, 395, 98 S.Ct. 2408, 2415, 57 L.Ed.2d 290 (1978); *see also Brown,* 856 S.W.2d at 179–80. Although society has an important interest in ensuring that serious crimes are promptly investigated, the Supreme Court has stated:

> If the warrantless search of a homicide scene is reasonable, why not the warrantless search of the scene of a rape, a robbery, or a burglary? "No consideration relevant to the Fourth Amendment suggests any point of rational limitation" of such a doctrine.

*Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413 (quoting *Chimel v. California,* 395 U.S. 752, 766, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685 (1969)). The Court concluded that the amorphous and unlimited nature of a crime scene exception simply makes it unworkable under the Fourth Amendment. *See*

*Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413. We are therefore compelled to reject the State's suggestion that we adopt a "crime-scene" exception in this case.[4]

### Conclusion

Because the warrantless search of appellant's jewelry box in his bedroom was not justified by any of the established exceptions to the warrant requirements of the United States and Texas constitutions, such as third-party consent, implied consent, or exigent circumstances, the search in this case, as a matter of law, was unreasonable. *Kolb,* 532 S.W.2d at 89 (citing *Katz,* 389 U.S. at 357, 88 S.Ct. at 514). The marihuana seized by Officer Davis in this case must be suppressed. *See Mapp,* 367 U.S. at 655, 81 S.Ct. at 1691; *see also* TEX.CODE CRIM. PROC. ANN. art. 38.23(a). As noted by the Supreme Court:

> Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the character of its own existence.

*Mapp,* 367 U.S. at 659, 81 S.Ct. at 1694.

Accordingly, I would hold that the trial court erred in denying appellant's motion to suppress evidence. I would sustain appellant's points of error, reverse the trial court's judgment, and remand the cause to the trial court.

Justice JENNINGS, dissenting.

---

**4.** The case law relied upon by the State does not support the State's contention that a "crime-scene" exception exists under the Fourth Amendment. *See, e.g., Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *United States v. Estese,* 479 F.2d 1273 (6th Cir.1973). The warrantless searches that were conducted in those cases were validated because law enforcement officers encountered exigent or emergency circumstances at the scene of a crime. *See*

*Tyler,* 436 U.S. at 509 (burning building presented "exigency of sufficient proportions" to render warrantless entry reasonable). In this case, Davis testified that he encountered no exigent circumstances, faced no emergency situation, and was not acting in a community care-taking function. Thus, exigent circumstances cannot validate the warrantless search conducted here. *Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413; *Brimage v. State,* 918 S.W.2d 466, 500 (Tex.Crim.App.1996).