

IN THE
TENTH COURT OF APPEALS

No. 10-22-00369-CR

THE STATE OF TEXAS,

Appellant

v.

SAUL LEE SUAREZ,

Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 17-05032-CRF-361

MEMORANDUM OPINION

Saul Lee Suarez is charged by indictment with the first-degree felony offense of

murder. After a pre-trial hearing, the trial court granted Suarez's motion to suppress.

The State opposed the motion to suppress in the trial court and now brings this appeal.

Background

Officers with the City of Bryan Police Department responded to reports of a

shooting at a local park. Once on the scene, a deceased individual was found in a pickup

truck. Witnesses described what officers concluded was an exchange of gunfire between

the deceased and another individual. Later, an individual, who was a relative of Anthony Lopez, called the police to inform them that he had received a call from Lopez wherein Lopez said he had been shot. By a cell phone ping, officers were able to locate Lopez's cell phone at a local apartment complex. Upon the officer's arrival at the apartment, they located Lopez in Suarez's bedroom, detained him, and confirmed he had been shot. Lopez was then transported to a hospital for treatment. Afterwards, officers conducted a protective sweep and secured the apartment. The apartment, in which Suarez and four family members lived, was leased by Suarez's mother, Sylvia Sanchez. Detective Davis of the Bryan Police Department arrived on the scene later than the initial officer's response and took the lead in the investigation while not sure of who was officially in charge. Detective Davis ultimately obtained consent to search the apartment, including Suarez's room, from Sylvia. Suarez filed a motion to suppress in the trial court seeking suppression of all evidence or things seized from his bedroom, along with testimony by law enforcement concerning such evidence. Suarez does not appear to challenge the initial entry into the apartment to locate Lopez or the protective sweep conducted by the officers. After a hearing, the trial court granted Suarez's motion to suppress.

## Issue

In one issue, the State contends that it proved by a preponderance of the evidence that Sylvia had actual or apparent authority to consent to the search of Suarez's bedroom, and therefore the trial court abused its discretion in granting Suarez's motion to suppress.

AUTHORITY

When reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight given to their testimony and may accept or reject any or all of any witness's testimony. *Stiles v. State*, 927 S.W.2d 723, 729 (Tex. App.—Waco 1996, no pet.). We give almost complete deference to the trial court's determination of historical facts. *Rodriguez*, 521 S.W.3d at 8. An appellate court must examine the record in the light most favorable to the ruling and uphold the trial court's findings of fact so long as they are supported by the record. *Id*. "The appellate court then proceeds to a *de novo* determination of the legal significance of the facts as found by the trial court—including the determination of whether a specific search or seizure was reasonable." *Id*. We are obligated to uphold the trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

Consent searches are an established exception to the warrant and probable cause requirements of the Fourth Amendment and Article I, § 9 of the Texas Constitution. *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002); *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). When the State relies on consent to justify a search, it

must prove that the consent was freely and voluntarily given.[1] *State v. Ruiz*, 581 S.W.3d 782, 786 (Tex. Crim. App. 2019). The federal constitution requires the state to prove the validity of the consent by a preponderance of the evidence and the Texas Constitution requires the state to prove the validity of the consent by clear and convincing evidence. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

Consent to search is not to be lightly inferred. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). A third party may consent to a search if the third party has actual authority over the place or thing to be searched. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). "The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property." *Id.* Common authority is determined by the third party's use of the property, rather than his legal property interest. *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011).

> The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)).

---

[1] Suarez did not challenge the voluntariness of Sylvia's consent in the trial court and makes no such claim on appeal.

If the third party does not have actual authority, consent may be validly obtained from an individual with apparent authority over the premises. *Limon*, 340 S.W.3d at 756. If "an officer reasonably, though erroneously, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists and the purported consent from the third party can serve to make the search reasonable." *Hubert*, 312 S.W.3d at 561 (Tex. Crim. App. 2010).

The objective standard for evaluating apparent authority is whether the facts available to the officer at the moment permit a person of reasonable caution to believe that the consenting party had authority over the premises. *Limon*, 340 S.W.3d at 756. "[R]easonableness hinges on 'widely shared social expectations' and 'commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest.'" *Limon*, 340 S.W.3d at 756–57 (quoting *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)).

Whether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which reviewing courts should examine *de novo*." *Hubert*, 312 S.W.3d at 559–60.

DISCUSSION

The issue the trial court was confronted with was deciding whether the State had proven that Sylvia had actual authority or apparent authority to consent to the search of

Suarez's bedroom.

In his testimony during the suppression hearing, Detective Davis revealed the information he had gathered on the scene before and up to the time he requested consent to search from Sylvia. Davis indicated that upon his arrival at the apartment, which was identified prior to his arrival, there was already a substantial Bryan police response. Suarez was already under arrest on a class C misdemeanor and had been taken outside and detained near the front entry to the apartment. Davis knew that Lopez was found in "Suarez's mother's apartment," that Lopez had been shot, was detained, and did not have a weapon on him when taken into custody. Because Lopez had been in the apartment, Davis was interested in finding evidence that could have been left by Lopez. Davis made contact with Sylvia inside the apartment; Suarez, Sylvia's niece and nephew, and Sylvia's mother were also in the apartment at the time. Sylvia allowed the police to enter the apartment. Sylvia informed Lieutenant Johnson in Davis's presence that there were two bedrooms in the back, one that belonged to her niece and one to her son. Davis indicated he did not know which son, but he did not make any further inquiry with Sylvia to resolve his question. Sylvia also informed Davis that Suarez had a backdoor to the outside. Davis spoke with Sylvia about the need for the police to conduct a search and asked for her consent to search. Davis also asked Sylvia "I'm assuming you're the adult and this is your home," which she responded to in the affirmative. Davis accepted Sylvia's representations that it was her apartment, and she was the adult. Davis added

that he did not have anything indicating that Sylvia did not have the authority to consent to search part of the apartment and that Davis was not told that he would need to ask Suarez for consent to search his bedroom. Davis obtained written consent to search the apartment from Sylvia.

Sylvia testified the living room was her room and where she slept. Suarez's room was the master bedroom, and Sylvia's niece had the other bedroom. None of the occupants shared Suarez's bedroom nor were the other occupants free to come and go into Suarez's bedroom without Suarez's permission. Because Suarez was eighteen, the room was his "privacy", and Sylvia was not allowed to go in Suarez's room without his permission. Sylvia respected Suarez's privacy as did the other occupants. Suarez's room had a lock on the door, the door was normally closed, and he kept his room locked. Suarez had primary control over his bedroom because he was an adult who made his own decisions. Sylvia indicated that Suarez's privacy was important to him. Sylvia acknowledged she signed the lease and paid the rent for the apartment.

The trial court's findings of fact found that the Bryan police officers knew at the time consent was given by Sylvia that Suarez was eighteen years old and an adult, that the bedroom from which the items were ultimately seized was Suarez's bedroom, and that Sylvia slept in the living room. Further, that when detective Davis requested consent from Sylvia, he did so in the presence of Detective Candido Amaya. That despite knowing Suarez was eighteen years old and that the back bedroom was Suarez's

bedroom Detective Amaya failed to inform Detective Davis that Sylvia was not the only adult and that the back bedroom belonged to Suarez. The trial court further found that Detective Davis, when obtaining consent from Sylvia, asked her, "I'm assuming you're the adult and this is your home" and that Davis relied solely on the fact that Sylvia was the adult and the homeowner when he obtained consent from her. Further, a protective sweep of the apartment had been performed by officers prior to the search. The trial court also found that Suarez was present and available for the purposes of asking his consent, and no officer requested his consent to search.

As a preliminary issue, the State contends that the bodycam video admitted during the suppression hearing proved by a preponderance of the evidence that Sylvia had actual or apparent authority to consent to the search of Suarez's bedroom, and that we should review *de novo* this "indisputable visual evidence" rather than give deference to the trial court's findings of fact. The State relies on *Carmouche v. State* as authority for its argument. 10 S.W.3d 323 (Tex. Crim. App. 2000). However, only in narrow circumstances when video evidence provides indisputable visual evidence contradicting witness testimony and does not pivot on an evaluation of credibility and demeanor should we decline to give "almost total deference" to the trial court's findings. *See id*. The deferential standard of review in *Guzman* applies to a trial court's determination of historical facts even when that determination is based on a videotape recording admitted into evidence at a suppression hearing. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim.

App. 2006); *see Guzman v. State*, 10 S.W.3d at 327, 332–33 (Tex. Crim. App. 2000). With one exception, the State does not argue that the bodycam video contradicts testimony from the suppression hearing, only that it provides indisputable visual evidence that should cause us to review the issue of authority to consent *de novo*. The only contradiction referenced by the State in its brief is the difference in Sylvia's suppression hearing testimony and the bodycam video regarding whether she knew the mother of the murder victim. The trial court made no finding regarding whether Sylvia knew the victim's mother or not. Therefore, we will not abandon our general rule that appellate courts should give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings. *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.). After our examination of the record, in the light most favorable to the trial court's ruling, we uphold the trial court's findings of fact because they are supported by the record. *See Rodriguez*, 521 S.W.3d at 8.

Our analysis now turns to a *de novo* determination of the legal significance of the facts as found by the trial court which includes the determination of whether a specific search or seizure was reasonable. *See id.* Whether it is reasonable for an officer to rely on consent is a question to be determined by examining the totality of the circumstances. *See Hubert*, 312 S.W.3d at 560.

"Actual authority is determined from all of the relevant evidence developed and is not limited to the facts available to the officers at the time of the search." *Hebert v. State*,

No. 14-05-00383-CR, 2006 WL 3797379, at *1 (Tex. App.—Houston [14th Dist.] Dec. 28, 2006, pet. ref'd) (mem. op., not designated for publication) *see United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) *see also Figueroa v. State*, 250 S.W.3d 490, 508 (Tex. App.— Austin 2008, pet. ref'd). The State must prove "mutual use of the property by persons generally having joint access or control for most purposes." *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997) (quoting *Matlock*, 415 U.S. at 171).

The trial court concluded that Sylvia did not have common authority or mutual use of Suarez's bedroom. The trial court also concluded that Suarez had a reasonable expectation of privacy in his bedroom, had legal standing to contest the search of his bedroom, and had legal standing to contest the consent given by Sylvia.

Here, the State has failed to show by a preponderance of the evidence, much less by clear and convincing evidence, that Sylvia possessed actual authority over Suarez's room sufficient to consent to its search. The trial court found the testimony of Suarez's mother regarding access and control of Suarez's bedroom to be truthful and credible. The trial court found the testimony of Detective Davis to be incomplete and unpersuasive. Based on Sylvia's testimony, the trial court was free to believe that Sylvia had limited access, if any, to Suarez's bedroom, that Suarez's bedroom was not subject to mutual use by Suarez and Sylvia, and that Sylvia did not have joint access or control over Suarez's bedroom "for most purposes." *See Matlock*, 415 U.S. at 171 n. 7. Sylvia's testimony provided evidence that enabled the trial court to overcome the presumption that Sylvia,

as a parent, had common authority over her son's bedroom. *See Hubert* , 312 S.W.3d at 563. Viewing the totality of the circumstances surrounding Sylvia's actual authority to consent to the search of Suarez's bedroom in the light most favorable to the trial court's ruling, we conclude that the trial court did not err in concluding that the State failed to prove that Suarez's mother had actual authority to consent to the search.

Next, we will determine whether the facts available to the officers at the moment consent was requested from Sylvia would permit a person of reasonable caution to believe that Sylvia had authority over the premises. *See Limon*, 340 S.W.3d at 756; *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed. 2d 148 (1990). We employ this objective standard in evaluating apparent authority to consent to a search. *See Id*. The "determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotes omitted). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. *Rodriguez*, 497 U.S. at 188–89.

Davis was present in the living room when another officer asked Sylvia about the "kids" bedrooms and Sylvia replied one bedroom was her nieces' and one bedroom was her son's. Davis was also present when another officer had an exchange with Sylvia that clarified Suarez was her son. Davis asked numerous questions about when Lopez arrived at the apartment, what entry Lopez used, who was at the apartment with Lopez, and

when Sylvia arrived; all primarily focused on Lopez. Davis then explained the need to search the apartment and asked Sylvia for consent to search, to which Sylvia replied "yeah." At the moment Davis asked Sylvia for consent to search the apartment, Davis had not asked Sylvia any questions that would solicit facts that could assist in determining whether Sylvia had authority over the premises. It was not until after Sylvia replied "yeah" and while Davis was in the process filling out the consent to search form that Davis said to Sylvia "I'm assuming you're the adult and this is your home," to which Sylvia replied "yes." Davis testified that he took Sylvia's affirmative response at face value. Davis also acknowledged during his testimony at the suppression hearing that he believed Sylvia could give consent based upon her affirmative response to his assumption, but again at the time Davis requested consent to search he had not stated to Sylvia "I'm assuming you're the adult and this is your home," nor had Sylvia responded to the statement. Law enforcement officers are not allowed to proceed without inquiry into ambiguous circumstances or to always accept at face value the consenting party's apparent assumption or claim of authority to allow the contemplated search. *Riordan v. State*, 905 S.W.2d 765, 771 (Tex. App.—Austin 1995, no pet.)

Davis testified that he assumed Sylvia was the head matriarch of the scene and after receiving consent, he believed they then had "carte blanche authority to go wherever." Davis's beliefs are not what control our review, it is an objective determination of whether the facts available to Davis at the moment he requested consent

would warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. *See Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed. 2d 148 (1990)

We recognize that the reasonableness of apparent authority depends on "widely shared social expectations," such as the expectation that family members share access, control, and use of their home and the items in it. *See Gonzalez v. State*, 608 S.W.3d 98, 105 (Tex. App.—San Antonio 2020, pet. ref'd). We also recognize there is no burden on the police to eliminate the possibility of atypical arrangements, in the absence of reason to doubt that the regular scheme was in place. *See Miller v. State*, 208 S.W.3d 554, 560 (Tex. App.—Austin 2006, pet. ref'd). It was obvious there were multiple generations—Sylvia's mother, Sylvia's niece and nephew, and Suarez—all occupying the apartment, some with their own bedroom. Under these circumstances, there was an ambiguity in the situation that should have given Davis pause to doubt Sylvia's authority over each bedroom in the apartment. Davis's assumption that Sylvia was the matriarch and his belief that the officers had carte blanche authority were objectively unreasonable. Further, Davis's belief that Sylvia said, "it was her and her kids that lived there" is in conflict with the fact that Sylvia's niece, nephew, and mother resided in the apartment. The burden is not met if law enforcement officers, when faced with an ambiguous situation, proceed without making further inquiry. *See Whisenhunt v. State*, 122 S.W.3d 295, 299 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd). "If officers do not learn enough and if the

circumstances fail to clarify whether the property is subject to common authority by the consent-giver, then the warrantless search is unlawful." *Id.*

We conclude that the trial court did not err in concluding that the officers were not reasonable in believing that Sylvia had apparent authority to consent to the search of Suarez's bedroom. Accordingly, we affirm the trial court's order granting Suarez's motion to suppress. We overrule the State's sole issue.

MATT JOHNSON
Justice

Before Chief Justice Gray*,
     Justice Johnson, and
     Justice Davis[2]
*(Chief Justice Gray dissents.)
Affirmed
Opinion delivered and filed August 29, 2024
Do not publish
[CR25]



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. See TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.